# In the United States Court of Federal Claims

No. 11-361C
(Filed under seal August 10, 2011)
(Reissued August 23, 2011)[1]

* * * * * * * * * * * * * * * * * * * * * * * * *
\*
**THE TAURI GROUP, LLC,**               \*     Post-award bid protest; Defense Threat
                                        \*     Reduction Agency; motion for discovery to
             Plaintiff,                 \*     supplement the administrative record;
                                        \*     information relied upon but omitted from the
     v.                                 \*     record; individual evaluator worksheets;
                                        \*     concrete steps in the evaluation process;
**THE UNITED STATES,**                  \*     analyses or opinions of officials outside an
                                        \*     evaluation team; needed for effective
             Defendant,                 \*     judicial review; record actually before the
                                        \*     agency; not rough drafts.
     and                                \*
                                        \*
**TASC, INC.,**                         \*
                                        \*
             Defendant-Intervenor.      \*
                                        \*
* * * * * * * * * * * * * * * * * * * * * * * * *

*Eric J. Marcotte*, Winston & Strawn LLP, Washington, D.C., for plaintiff. *Mark A. Smith* and *Ralph V. Pantony, III*, Winston & Strawn LLP, both of Washington D.C., of counsel.

*J. Hunter Bennett*, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Patricia M. McCarthy*, Assistant Director, all of Washington, D.C., for defendant.

*Kevin P. Mullen*, Jenner & Block LLP, Washington D.C., for intervenor. *Edward Jackson* and *James C. Cox*, Jenner & Block LLP, both of Washington D.C., of counsel.

### ORDER

WOLSKI, Judge.

    Plaintiff The Tauri Group, LLC ("Tauri") protests the award to intervenor TASC, Inc. of a contract to provide Advisory and Assistance Services to the United States Department of

---

[1] Because of the protective order in this case, the parties were given the opportunity to request redactions. They requested none. Accordingly, the order is reissued for publication with some minor, non-substantive corrections.

Defense's Defense Threat Reduction Agency.  Presently before the Court are Tauri's motion for discovery to supplement the administrative record, and the government's motion to amend the administrative record.  For the reasons that follow, Tauri's motion is GRANTED-IN-PART and DENIED-IN-PART, and the government's motion is GRANTED.

Under solicitation HDTRA1-10-R-0006 (the "Solicitation"), the three evaluation factors (in descending order of importance) were Mission Capability, Relevant Present and Past Performance, and Cost.  Admin. R. ("AR") Tab 11 at 491-92.  The Mission Capability factor included three sub-factors -- two containing multiple elements that were identified in the Solicitation and the third entailing technical review of offerors' proposals for Task Order 1.  AR at 492-93.  Cost was to "be evaluated for cost reasonableness, realism and completeness to determine the most probable cost."  AR at 492, 496.  The Source Selection Plan ("SSP") assigned the respective evaluations to a Mission Capability Team, initially composed of seven and ultimately of six members, *see* AR at 372, 416, 423; to a Performance Risk Assessment Group ("PRAG") made up of three members, AR at 368, 372, 416, 423; and to a "Cost Team" that appeared to have just one identified member.  *See* AR at 368, 371, 415-16, 422-23.

The details of the evaluation processes to be followed by evaluators were omitted from the SSP, but were unveiled in the "Source Selection Team Training" that was apparently conducted on August 11, 2010.  *See* AR Tab 13 at 579.  In this training, among other things, the Cost "team" was informed that "[t]he Mission Capability Team [was to be] used to determine whether or not adequate resources have been proposed," AR at 596; that its probable cost estimate was to be "[b]ased on inputs from the Mission Capability Team and Defense Contract Audit Agency ("DCAA")," *id.*; and that it should "request assistance from [the] Mission Capability Team" concerning the appropriateness of labor categories and hours proposed, and of material, equipment and travel proposed.  *Id.*; *see also* AR at 649-51.  The Mission Capability evaluators were told to "[i]ndividually document [their] initial findings," AR at 617, and informed that the Cost "team" would "solicit" their help in determining if costs are realistic.  AR at 625.  The initial and final briefings given to the Source Selection Authority ("SSA") indicated that the Mission Capability Team was indeed used to determine the adequacy of offerors' proposed resources.  *See* AR Tab 27 at 4613, 4630, 4633-34, 4641-42; Tab 46 at 10035.

The administrative record in this case as it currently stands is voluminous.  Composed of 10,439 pages, the administrative record includes, *inter alia*: 1) the Solicitation and all amendments, AR Tabs 11, 12; 2) the SSP and all amendments, AR Tabs 8, 9; 3) the initial and final proposals of both Tauri and TASC, AR Tabs 14-22 (initial proposals), 31-39 (final proposals); 4) DCAA audit responses for the proposals of both Tauri and TASC, AR Tabs 23, 25; 5) SSA briefing slides for both the initial and final proposals, AR Tabs 27, 46; 6) two of the Excel workbooks used by the PRAG to memorialize its evaluations, AR Tabs 40, 41; 7) two Excel worksheets created by the Mission Capability Team to break down and compare both offerors' cost proposals, AR Tabs 43, 44; *see* Kehlet Decl. at 3; 8) a draft of the cost evaluation memorandum ("Cost Memo")[2] prepared by the Mission Capability Team for the Cost Team, AR

---

[2] It was only after the initial hearing on Tauri's motion that the government acknowledged it had

Tab 45; *see* Sanders Decl. at 4; 9) a Summary of the Final Evaluation Results, AR Tab 47; and 10) the Source Selection Decision Document, AR Tab 48.  Notwithstanding this volume, Tauri contended that the administrative record is missing information relied upon by the agency in evaluating the proposals, including documentation required by the Federal Acquisition Regulation.  *See* Pl.'s Mem. Supp. Mot. Disc. & Supp. Admin. R. at 1-2, 5-19.

In particular, plaintiff noted that "the record includes no communications between the Mission Capability Team and the Cost Team related to" whether TASC's proposed labor costs were realistic, *id.* at 9-11, and no documented analysis of the rates proposed for TASC's direct and indirect costs.  *Id*. at 11-15.  Tauri also argued that the past performance ratings were applied inconsistently, and that an inexplicable methodology was used to determine the relevance of previous contracts.  *Id*. at 15-19.  Noting that the government had acknowledged, when the protest of this award was before the Government Accountability Office ("GAO"), "that the agency had 'destroyed' evaluator worksheets and other evaluation materials shortly after contract award," *id*. at 5, plaintiff sought to depose the leaders of the Mission Capability and Cost Teams and of the PRAG.  *Id*. at 11, 15, 19.

The government opposed the motion, arguing that the bases for the pertinent agency decisions were already well-documented, accommodating effective judicial review.  *See* Def.'s Opp. to Pl.'s Mot. Disc & Supp. Admin. R. ("Def.'s Opp.") at 1-2, 8-11, 16-17.  Defendant maintained that a "cost evaluation paper" sent from the Mission Capability Team to the Cost Team was in the administrative record, as was the detailed spreadsheet on which it rested.  *Id.* at 9 (citing AR Tabs 44, 45).[3]  No mention of the destroyed evaluation worksheets was made in the government's opposition paper, a point stressed by Tauri in its reply.  *See* Pl.'s Reply Supp. Mot. Disc. & Supp. Admin. R. at 1-3.  During the argument on the motion, the government defended the destruction of the individual evaluator worksheets, contending that it followed a line of GAO decisions allowing for such destruction once a consensus opinion is reached and that it believed our court's opinion to the contrary in *Pitney Bowes Gov't Solutions, Inc. v. United States*, 93 Fed. Cl. 327 (2010), "was wrongly decided."  Tr. (July 25, 2011) ("Tr.") at 49 (citing *Joint Mgt. & Tech. Servs.*, 2004 CPD ¶ 208, 2004 WL 2375683 (Comp. Gen. Sept. 22, 2004), and *Pitney Bowes*), 53.  Counsel for defendant also maintained that if the reasons for the agency actions contained in the administrative record were insufficient to demonstrate non-arbitrariness, the plaintiff should receive judgment, not discovery.  *See id*. at 60-61.

Although government counsel represented that it was his understanding that the destroyed evaluation worksheets solely concerned the Mission Capability factor and not the two

---

only included a draft of the Cost Memo in the administrative record.  The government subsequently moved for the final version of the Cost Memo to be added to the administrative record.  Def.'s Mot. Seeking Leave Am. Admin. R. at 2.

[3]  This spreadsheet was initially produced as an unusable PDF file, *see* AR Tab 44, and was supplemented by a copy in the native Excel format.  *See* Tr. (July 25, 2011) at 39, 57; Order (July 25, 2011) at 2.

factors that are the focus of the discovery motion, Tr. at 50-52, the letter the agency submitted to the GAO was not so specific. *See* Def.'s Status Rep. Ex. 1 at 1. Concerned that the administrative record might be less than complete, the Court allowed plaintiff to submit written questions for the three potential deponents, with the aim of determining whether documents created or relied upon in the evaluation process were omitted from the record and whether any such documents were destroyed; and whether oral briefings or communications were relied upon but not reflected in the administrative record. *See* Order (July 25, 2011). After some slight modifications to the questions, the Court required the three team leaders to submit declarations in response. *See* Order (July 27, 2011).

In the course of providing answers to these questions, the agency "discovered a number of additional documents that should have been included in th[e administrative] record but were inadvertently omitted." Def.'s Mot. Seeking Leave Am. Admin. R. at 1 ("Def.'s Mot."). The government moved to amend the administrative record by adding: 1) Past Performance Information Retrieval System ("PPIRS") workbooks used by the PRAG to store PPIRS information and document discussions and conclusions concerning this information, *see id.* at 1; Guthrie Decl. at 2; 2) the agency's clarification requests, omitted from AR Tab 26 due to a clerical error, Def.'s Mot. at 1-2 & n.2; 3) a Cost Memo concerning the offerors' initial proposals that was sent from the Mission Capability Team to the Cost Team, *id.* at 2; Kehlet Decl. at 2-4; Sanders Decl. at 5; and 4) the final version of the Mission Capability Team's Cost Memo concerning the final proposals, a draft of which is contained at AR Tab 45. Def.'s Mot. at 2; Sanders Decl. at 4, 6. All of these documents appear to have been relied upon by the agency in its evaluations of the offerors' proposals, and the motion has not been opposed. Accordingly, the government's motion to amend the administrative record is **GRANTED**.

With the addition of the PPIRS workbooks, all of the documents created or relied upon by the PRAG in the course of evaluating past performance now seem to be in the administrative record. *See* Guthrie Decl. at 3.[4] A number of documents identified in the declarations of the leaders of the Mission Capability and Cost Teams have not been filed with the administrative record, ostensibly because they "were prepared prior to the formulation of the consensus evaluations that were considered by the [SSA] in making the award decision." Def.'s Mot. at 2; *see also* Sanders Decl. at 4-6. These included various Excel worksheets created by the Mission Capability Team in the course of its assistance to the Cost Team, Excel worksheets created by the Cost Team, and e-mail communications between the two teams. *See* Kehlet Decl. at 4-5; Sanders Decl. at 4-6. The only evaluation documents that were destroyed were the Mission Capability Team leader's copies of the individual evaluator worksheets for that factor, and he noted that "some members" of the team "may still have copies of their worksheets." Kehlet Decl. at 5. No oral reports were remembered by the two leaders as being relied upon in the cost analyses, although discussions on the road to consensus were acknowledged. *Id.* at 6; Sanders Decl. at 6-7.

---

[4] The only information missing concerned the initial proposals, as the Excel workbooks "were updated/overwritten with the new information contained in the final" ones. Guthrie Decl. at 3.

The Court reconvened the hearing concerning plaintiff's motion for discovery to discuss whether Tauri desired to modify its motion in light of the declarations and the government's motion to amend the record. *See* Order (Aug. 4, 2011). Plaintiff now requests that all documents identified in the declarations but withheld from the record be produced and added to the record. Pl.'s Resp. re: Mot. Disc & Supp. Admin. R. at 4-5. Tauri maintains its request for the depositions of the leaders of the Cost Team and the PRAG, but would defer its request to depose the Mission Capability Team leader if the Court orders the production of the documents identified in his declaration. *Id*. at 4, 7. The government continues to oppose further supplementation of the record.

At least insofar as plaintiff's request focuses on documents created during the evaluation process, the matter appears to the Court to involve more a question of *completing* the administrative record, rather than supplementing it. *See Mori Assocs. v. United States*, 98 Fed. Cl. 572, 575 (2011). The government seems to be of the opinion that the administrative record is whatever it says it is, regardless of whether this informal compilation of materials contains all of the information relied upon by the agency in reaching the challenged decision. To be sure, dicta in the Supreme Court opinion *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985), recently emphasized by the Federal Circuit in *Axiom Resource Management., Inc. v. United States*, 564 F.3d 1374, 1379-80 (Fed. Cir. 2009), could be taken as supporting this proposition.[5] But the statement that Administrative Procedure Act ("APA") review is "based on the record the agency presents to the reviewing court," *Fla. Power*, 470 U.S. at 744, identified just one authority as support: the Supreme Court's opinion in *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971) ("*Overton Park*"). That authority makes plain that "review is to be based on the *full administrative record* that was before the [agency decision maker] at the time he made his decision." *Overton Park*, 401 U.S. at 420 (emphasis added). As the Federal Circuit clearly explained in *Axiom*, the relevant doctrine entails "limiting review *to the record actually before the agency*," 564 F.3d at 1380 (emphasis added), not to the record the agency chooses to present. Thus, when the "focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court," *Camp v. Pitts*, 411 U.S. 138, 142 (1973), this "existence" depends on what the agency did in reaching its decision, not what it chooses to assemble after a protest is lodged.

Of course, in a bid protest, the administrative record need not consist of every single document related in any way to the procurement in question, but may be reasonably limited to materials relevant to the specific decisions being challenged. Under the government's approach, however, an agency could distill its proposal evaluations to a single, summary report of conclusions presented to the SSA, which would constitute the only information considered and thus the "full" record of a decision. But judicial review using the APA standard requires the Court to scrutinize whether the agency "considered the relevant factors and articulated a rational connection between the facts found and the choice made." *Balt. Gas & Elec. Co. v. Natural Res.*

---

[5] The statement was dicta, used to rebut the policy argument that a statute providing for appellate review of an agency decision should be interpreted to allow for initial review in a district court when no formal agency hearing was held. *See Fla. Power*, 470 U.S. at 743-44.

*Def. Council*, 462 U.S. 87, 105 (1983) (citation omitted).  While not substituting its judgment for the agency's, Court review "entails identifying the judgments made by the relevant officials and verifying that the relevant information was considered, the relevant factors were employed, and a satisfactory explanation was articulated." *Fort Carson Supp. Servs. v. United States*, 71 Fed. Cl. 571, 592 (2006) (citing *Overton Park*, 401 U.S. at 416, and *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  An SSA is free to base his or her judgment on the evaluations and ratings of others, *see USfalcon, Inc. v. United States*, 92 Fed. Cl. 436, 453 (2010), but in doing so makes the judgments of those other officials relevant to a court's review -- as that is where the facts were found and the connections to conclusions articulated.  Like a calculus examination, what matters is not just the answers but the proofs.

Accordingly, although supplementation of the administrative record is "limited to cases in which 'the omission of extra-record evidence precludes effective judicial review,'" *Axiom*, 564 F.3d at 1380 (citing *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005)), this will include circumstances when the information considered and reasoning employed by the evaluators relied upon by an SSA are omitted.  Thus, it has long been recognized that supplementation is appropriate to add "information relied upon but omitted from the paper record." *Orion Int'l Techs. v. United States*, 60 Fed. Cl. 338, 343-44 (2004).  Whether this be considered a matter of completing or supplementing the record, the relevant decision makers must be identified for purposes of court review.

When an evaluation process is followed in which the views of individual evaluators are binding on an SSA, the former's determinations must be reviewed in a bid protest.  *See Beta Analytics Int'l, Inc. v. United States*, 67 Fed. Cl. 384, 396-99 (2005).  But even when a consensus approach is followed, individual evaluator worksheets should be included in the administrative record when "individual evaluations were a concrete step in the technical evaluation process." *Tech Sys., Inc. v. United States*, 98 Fed. Cl. 228, 247 (2011).  Such a concrete step takes the individual views from the realm of deliberation or "rough drafts" and places them in the category of information considered or relied upon in the decision making process.  Similarly, the Court concludes that when the analyses or opinions of officials outside an evaluation team are considered by that team in reaching its conclusions, even if a consensus approach is followed by the team, those analyses or opinions should be included as part of an administrative record.  Inclusion of documents supporting the decisions of subordinate evaluators is particularly important when the SSA bases the procurement award on briefing slides rather than the SSA's own review of the proposals.  *See USfalcon*, 92 Fed. Cl. at 454.

In the procurement at issue, members of the Mission Capability Team individually documented their evaluation findings.  *See* AR Tab 13 at 617, Tab 46 at 9959, Tab 47 at 10066-67. Without question, that concrete step requires individual evaluation worksheets to be included in the record. *Tech Sys.*, 98 Fed. Cl. at 247.  Concerning these worksheets, plaintiff's motion is **GRANTED**.  Defendant shall file as a supplement to the administrative record any copies of these worksheets retained by the individual evaluators, so that effective judicial review of that factor evaluation is not frustrated.

Concerning the other documents requested by Tauri, the Court concludes that the various Excel worksheets identified in the Mission Capability Team leader's declaration, *see* Kehlet Decl. at 4-5, constitute the analysis underlying the determinations contained in the Mission Capability Team's reports to the Cost Team, and should be added to the administrative record to facilitate effective review of the cost evaluations.  The e-mail communications identified in that declaration, *see id.* at 5, also either contain information considered by the Cost Team, or place that information in context, and should also be added to the administrative record to allow for effective review of the Cost Team's determinations.[6]  Tauri's motion is **GRANTED** concerning the documents described above.  The motion is **DENIED** as it pertains to the March 9 and March 11, 2011 interim versions of the March 15, 2011 Excel worksheet, as these documents are the equivalent of rough drafts that were made obsolete by the finished product.

Of the documents identified in the Cost Team leader's declaration but not yet included in the administrative record, the Court concludes that all except the e-mail communications relating to the clarification requests should be added to the administrative record, so that effective judicial review of the cost evaluations is not frustrated.  The Excel worksheets are described as resulting in "dollar amounts and numbers" that were incorporated in slides used to brief the SSA, *see* Sanders Decl. at 5-6, and thus reflect the analysis underlying the factual findings the SSA relied upon in reaching her decision.  The e-mail communications concerning the various versions of the Cost Memo and the SSA briefing slides, *see id.*, would also either contain information considered by the Cost Team, or place that information in context.  Tauri's motion is **GRANTED** regarding the aforementioned Excel worksheets and e-mail communications, and is **DENIED** regarding the e-mails relating to the clarification requests.

Tauri's motion for leave to depose the three team leaders is **DENIED**.  Once the administrative record is supplemented with the documents discussed above, it should contain all of the relevant information considered by the evaluators whom the SSA relied upon, and their reasoning, permitting effective judicial review of the agency's decision to award TASC the contract in question.

The government shall file the documents added to the administrative record by this order on or by **Friday, August 12, 2011**.  Plaintiff's brief in support of its motion for judgment may be filed on or by **Wednesday, August 17, 2011**, to enable plaintiff to address the information added to the record by this order.

**IT IS SO ORDERED.**

s/ Victor J. Wolski
**VICTOR J. WOLSKI**
Judge

---

[6] The mere inclusion in the administrative record of the e-mail communications requested by Tauri should not be taken to mean that all information in these communications will ultimately be found relevant to the issues raised in this protest.